YOUNG WOMEN'S CHRISTIAN ASSOCI-
ATION OF OWENSBORO, Kentucky, Appellant,

v.

FAMILY Y OF OWENSBORO—DAVIESS
COUNTY, INC., Appellee.

Court of Appeals of Kentucky.

Dec. 1, 1972.

Thomas E. Sandidge, James S. Sandidge, Sandidge & Sandidge, Owensboro, for appellant.

John S. Hager, Morton J. Holbrook, Ridley M. Sandidge, William G. Craig, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellee.

VANCE, Commissioner.

The YMCA and YWCA of Owensboro jointly participated in a drive to raise funds for the construction of a new facility to be occupied and used by each of them as autonomous associations with separate staffs, separate programs and separate budgets. Approximately $780,000.00 was raised in the drive. An additional fund drive, in which the YWCA refused to participate, was conducted by the YMCA. The new facility has now been constructed at a cost of $1,-264,000.00.

Under their respective charters the YMCA was established for the purpose of providing programs, facilities and training for young men and boys and the YWCA offered programs for women and girls although at various times in the past some of the programs of both organizations have been open to members of the opposite sex.

Some time following the original fund drive the YMCA amended its corporate charter and changed its name to *Family Y of Owensboro—Daviess County, Inc.* It announced that thereafter it would accept family memberships and institute programs for both men and women. The YWCA concluded that *Family Y* intended to compete with it for membership; that such competition was not envisioned when the fund-raising drive began and that it would not be feasible for the two competing organizations to jointly use the same facility.

YWCA then instituted this action to recover from *Family Y* the sum of $390,-000.00 (one-half of the proceeds of the initial fund-raising drive) or in the alternative it sought to be adjudged to be the owner of an interest in the new facility proportionate to the ratio of $390,000.00 to $1,264.000.00.

In a counterclaim *Family Y* asked for a declaration of rights under the provisions of such arrangements and agreements between the parties as the court might find to exist.

The trial court dismissed the claim of the YWCA. On the counterclaim the court adjudged that the facility shall be owned and operated by *Family Y*; and that it be operated and managed by a board of thirty-six directors, three of whom to be clergymen, two to be full-time athletic coaches, sixteen to be elected by the membership of the YMCA and fifteen to be elected by the membership of the YWCA. The judgment further directed that the Articles of Incorporation of *Family Y* be amended to accommodate the corporate structure adjudged. Each party was adjudged to pay one-half of the costs.

YWCA has appealed from the judgment. *Family Y* filed notice of cross-appeal only as to the allocation of costs but did not perfect the cross-appeal.

YWCA's claim is based on the contention that the original undertaking of YMCA and YWCA was a joint venture which was breached by YMCA when it changed its plan of operation and offered family memberships. It is apparent from the record that in the beginning both the YMCA and YWCA recognized a need for new facilities and knew that separate fund drives would not be feasible. They tentatively agreed upon and supported a single fund drive the proceeds of which were to be used for the construction of a new facility for the use of each association. It is equally apparent that no understanding was ever reached that the operation of that facility should be conducted as a joint enterprise.

Neither party possessed a signed copy of any agreement but it was stipulated by the parties that in the beginning they executed a letter of intent which provides as follows:

### "LETTER OF INTENT"

"WHEREAS, there exists in the City of Owensboro an association known as the Young Men's Christian Association of Owensboro, Kentucky (hereinafter referred to as the YMCA), whose purpose is to establish and maintain a fellowship of men and boys united by a common loyalty to Jesus Christ for the purpose of developing Christian personality and building a Christian society; and

"WHEREAS, there exists in the City of Owensboro an association known as the Young Women's Christian Association of Owensboro, Kentucky (hereinafter referred to as the YWCA), whose purpose is to build a fellowship of women and girls devoted to the task of realizing in our common life those ideals of personal and social living to which we are committed by our faith as Christians; and

"WHEREAS, the common purpose of the YMCA of Owensboro, Kentucky, and of the YWCA of Owensboro, Kentucky, is to develop Christian character and build a Christian society through activities and services which contribute to spiritual, mental, physical and social growth; and

"WHEREAS, the YMCA and YWCA now have their own separate facilities which are operated and financed completely independent of each other; and

"WHEREAS, the physical facilities of both the YMCA and the YWCA are wholly inadequate for their intended use; and

"WHEREAS, both the YMCA and the YWCA recognize that a simultaneous capital fund raising campaign by each to provide separate new facilities for the two associations would result in an onerous burden on the citizens of Owensboro and Daviess County.

"NOW, THEREFORE, in the best interests of the youth of this community, it is the intent of the YMCA and the YWCA that:

(1) Each will sincerely work with the other to finance and construct facilities for the joint and common use of both associations.

(2) Each will enter into a reasonable working agreement whereby the administrative and financial responsibilities for the new facilities will be established in such a way that the programs of each association can be continued and expanded.

(3) That the new facilities referred to herein shall consist of a gymnasium, modern indoor swimming pool, class rooms, meeting rooms, and men and women's health club, kitchen.

(4) Each will use its best efforts in working out any differences that may arise in fulfilling the intent above expressed.

"Witness the signatures of the following on this the 21 day of February, 1966.

"YOUNG MEN'S CHRISTIAN ASSOCIATION OF OWENSBORO, KENTUCKY

"By /s/ H. P. Schott
President

"YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF OWENSBORO, KENTUCKY

"By /s/ Elaine Washburn
President"

In its brief YWCA states:

"Pursuant to the letter of intent numerous conferences followed between the YMCA and the YWCA as to the location, construction, title, occupancy, and joint use of the proposed new building. As a result they agreed in May, 1966, that each of them would occupy and use the building as an autonomous association with a separate staff, separate programs, and separate budgets; that title to the land and building should be placed in the name of the YMCA; that it should be responsible for the construction thereof; that it would lease portions thereof and facilities therein to the YWCA; and that arrangements as to such leasing would be negotiated on the basis of the fullest cooperation between them as to the details when the operating costs were known. * * *."

Substantially the same allegation was contained in its pleading.

The trial court found that no joint venture existed. We do not find that ruling to be erroneous.

▬▬▬▬

A joint venture requires more than an agreement of parties to act in concert to achieve a stated objective. There must be some sharing of responsibility and control of the venture. Burbank v. Sinclair Prairie Oil Co., 304 Ky. 833, 202 S.W. 2d 420 (1947); Tecon Corporation v. Ralph E. Mills & Gorman, Inc., 186 F.Supp. 891 [Eastern District of Kentucky (1960)]; Williston, Third Edition, Section 318. An essential feature of joint venture is the element of joint control. Detachable Bit Co. v. Timken Roller Bearing Co., 133 F.2d 632, Sixth Circuit (1943); Fries v. United States, 170 F.2d 726, Sixth Circuit (1948).

The agreement of the parties was that each would work with the other to solicit funds for construction of the facility for joint use but YWCA did not contemplate nor desire responsibility for the construction or operation of the facility. Thus it was agreed that title would be taken in the name of YMCA and that YMCA would let the contract for construction. YWCA assumed no liability that might arise from that contract. YWCA was to be a tenant and it assumed no obligation for the expenses of operation or maintenance nor did it assume any responsibility for the control and management of the facility. The record is devoid of any indication that *Family Y* is unwilling to work out details of a lease of space in the facility to the YWCA upon a reasonable basis.

The judgment restricts the corporate structure of *Family Y* insofar as the membership of its board of directors is concerned but *Family Y* has not appealed from the judgment and we fail to see that it is prejudicial to the YWCA.

The judgment is affirmed.

All concur.